Cavanagh, J.
(concurring). This premises liability suit arises out of the plaintiff’s claim that she fell and injured herself after stepping into a pothole in the defendant’s parking lot. The circuit court granted defendant summary disposition, and the Court of Appeals reversed. The majority now reverses the Court of Appeals, and holds that (1) the pothole was open and obvious, and (2) there is no justification for imposing liability on the defendant despite the open and obvious nature of the danger presented by the pothole because the plaintiff failed to provide evidence that the pothole had “special aspects.”
*527 I join the majority’s decision to reverse the Court of Appeals and reinstate the judgment of the circuit court because I agree that the plaintiff failed to establish a basis for imposing liability despite the open and obvious nature of the pothole. I also join the majority’s statement that the trial court erred in focusing on the plaintiff’s subjective degree of fault. However, I write separately to express my disagreement with the majority’s “special aspects” analysis. I would instead prefer to work with the premises liability law already offered by this Court and to adopt an approach more true to the Restatement.
I. THE MAJORITY APPROACH
The majority offers an approach to open and obvious danger cases that focuses on the special aspects of a condition:
In sum, the general rule is that a premises possessor is not required to protect an invitee from open and obvious dangers, but, if special aspects of a condition make even an open and obvious risk unreasonably dangerous, the premises possessor has a duty to undertake reasonable precautions to protect invitees from that risk. [Ante at 517.]
I agree with the majority that a premises possessor is not generally required to protect an invitee from open and obvious dangers. Also, I agree with the majority that there are exceptions to the general rule. However, I disagree with the majority that the issue can be simply summarized in terms of whether “special aspects” of a condition make the risk of harm unreasonably dangerous. Instead, the Court must make two inquiries: (1) whether the possessor may be held liable pursuant to the terms of 2 Restatement Torts, 2d, *528 § 343, and (2) whether liability is suspended under § 343A. In order to determine whether liability should be imposed, a thorough consideration of the historical underpinnings of the open and obvious danger doctrine is in order. I offer such an analysis in this opinion, with the hope that the majority opinion will not be read as limiting the scope of the doctrine.
n. THE OPEN AND OBVIOUS DANGER DOCTRINE AND THE RESTATEMENT APPROACH
Recovery has been barred in premises liability cases involving open and obvious dangers for at least a century. See, e.g., Caniff v Blanchard Navigation Co, 66 Mich 638; 33 NW 744 (1887). The Restatement approach has been key to Michigan’s open and obvious danger law for almost as long. The first explicit reference incorporating the Restatement approach is Goodman v Theatre Parking, Inc, 286 Mich 80; 281 NW 545 (1938), where the plaintiff sought damages for a sprained ankle sustained after stepping on a cinder in the defendant’s parking lot.[1] Since that time, the Restatement has been cited repeatedly, even after its text was changed. See Quinlivan v Great Atlantic & Pacific Tea Co, Inc, 395 Mich 244; 235 NW2d 732 (1975)(quoting the Restatement with approval). It is safe to say that the current version of Restatement *529 §§ 343 and 343A form the basis for Michigan’s open and obvious decisional law.[2]
A. WHAT THE RESTATEMENT SAYS
The applicable sections of the Restatement provide as follows:
§ 343. DANGEROUS CONDITIONS KNOWN TO OR DISCOVERABLE BY POSSESSOR
A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
(c) fails to exercise reasonable care to protect them against the danger.
§ 343A. KNOWN OR OBVIOUS DANGERS
(1) A possessor of land is not hable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.
(2) In determining whether the possessor should anticipate harm from a known or obvious danger, the fact that the invitee is entitled to make use of public land, or of the facilities of a public utility, is a factor of importance indicating that the harm should be anticipated.
*530 I read § 343 as providing a standard of care to be applied in cases where there exists a dangerous condition on the premises that the possessor knows about or could reasonably discover.[3] If the possessor is charged with knowledge of the condition or the court finds that he could reasonably discover the condition, he can be liable if (1) he fails to exercise reasonable care to protect his invitees even though the possessor should realize that the condition poses an unreasonable risk of harm to an invitee, and (2) he should realize that an invitee will either fail to discover the condition, or fail to appreciate the danger of the condition if it is discovered, or fail to protect himself from the danger even if discovered or realized.
More instructive is the text of comment (a) to § 343, which provides that “This section should be read together with § 343A, which deals with the effect of the fact that the condition is known to the invitee, or is obvious to him .... In the interest of brevity the limitation is not repeated in this section.” Comment (a) is helpful in two ways: it illustrates that hidden or unknown conditions can be distinguished from known or obvious conditions and that § 343A is a rule designed to limit liability, whereas § 343 is designed to allow for the imposition of liability.
It is important to realize that the comments to § 343A begin by saying, “The rule stated in this subsection applies to all persons who enter or remain on land in the capacity of invitees, as defined by § 332.” Thus, though §§ 343 and 343A must be read together, *531 I believe that § 343A needs to be read as its own rule, and not as an exception to § 343. The general rule provided by § 343A is that a possessor of land is not hable to his invitees for injuries caused by activities or conditions on the land whose danger is known or obvious. The second clause of subsection (1) of § 343A provides the exception to this rule: if the possessor of land should anticipate the harm to the invitee despite the invitee’s knowledge or the condition’s obviousness, the possessor will not be relieved of liability under the general open and obvious rule.
B. WHERE DOES THE RESTATEMENT COME INTO PLAY?
The second imperative point to understand about Restatement §§ 343 and 343A is that they refer to the imposition of liability; they do not discuss whether a duty exists. In fact, one of the very first cases incorporating the Restatement into our jurisprudence stated, “2 Restatement of the Law of Torts, Negligence, under title of ‘business visitors,’ § 343, sets forth the following standard of care which we believe is applicable here . . . .” Nash v Lewis, 352 Mich 488, 492; 90 NW2d 480 (1958). In my view, § 343 and § 343A assume that a duty has been imposed by virtue of the possessor and invitee relationship, but that liability nonetheless can be limited under certain circumstances.
Unfortunately, the Restatement does not explicitly lay out the standard of care, it simply says that a possessor of land “is subject to liability” in § 343 cases, or “is not liable” in § 343A cases. Thus, the Restatement only explicitly provides a liability shield. However, the Restatement’s use of phrases such as “should expect,” “unreasonable risk,” and “reasonable *532 care” indicate that a premises possessor must protect his invitees “from an unreasonable risk of harm caused by a dangerous condition of the land that the landowner knows or should know the invitees will not discover, realize, or protect themselves against.” Bertrand v Alan Ford, Inc, 449 Mich 606, 609; 537 NW2d 185 (1995).
Once this premises liability rule is plugged into the language of the Restatement, we would be left with the following rule in known or obvious danger cases: A possessor owes his invitees a duty of reasonable care in order to protect them from an unreasonable risk of harm caused by a dangerous condition on the land; he breaches that duty by failing to protect his invitees from harm, though he should have anticipated that harm would result from the known or obvious danger despite the condition’s obviousness or the invitee’s knowledge of the danger. When the invitor breaches his duty of care in this manner, he can be subject to liability for physical harm caused to his invitees by a condition on the land if the conditions of § 343 are met.
A second inquiry would then be whether, despite the possibility that liability could normally be imposed against the possessor because he has failed to reasonably protect his invitee, the possessor can nonetheless avoid liability on the basis that the danger was known or obvious to the invitee. When the danger is obvious, or when the invitee knows of it, § 343A of the Restatement would suspend liability unless the possessor should anticipate harm flowing from the condition despite the invitee’s knowledge of the condition or the obviousness of the condition.
*533 C. HOW THE CASES CONFUSE THE ISSUE, AND WHAT CONTRIBUTORY NEGLIGENCE HAS TO DO WITH IT
Unfortunately, the Restatement approach can be somewhat difficult to apply because it bears some similarity to the contributory negligence doctrine. I believe that these similarities have caused Michigan’s case law on the open and obvious doctrine to be somewhat imprecise.
The potential for confusion stems from the fact that, in both contributory negligence and in open and obvious cases, liability can be suspended because of action (or inaction) on the part of the plaintiff. In both instances, a particular defendant may be absolved of liability for negligence even though he owes a duty to the plaintiff. Despite that similarity, though, there is a distinct difference between the open and obvious rule and the rule of contributory negligence. In contributoiy negligence cases, a defendant is absolved of liability even where he acts completely negligently. Contributory negligence, a defensive mechanism, is based on the policy that damages are not recoverable where the plaintiff and the defendant are both partially at fault. The open and obvious danger doctrine, on the other hand, relies on the standard of care. Where the defendant fails to protect his invitees from an unreasonable risk of harm posed by a foreseeable danger, he will be liable. If the defendant is absolved from liability under the open and obvious doctrine, the reason for the absolution is not that the plaintiff acted negligently. Instead, the reason is that the open and obvious danger of the condition is a “circumstance” under the standard of care. The possessor will be deemed to have acted reasonably under those circumstances.
*534 The idea that defendants should prevail where the plaintiff fails to heed an open and obvious danger has been around for a while, but, unfortunately, the focus on the standard of care has been lost in some instances. The reason is partially that the open and obvious doctrine predates Michigan’s shift from contributory negligence to comparative negligence. In the era of contributory negligence, failure to precisely separate concepts of duty, liability, and standard of care bore little consequence because plaintiffs could lose simply by virtue of their own negligence. As Justice Levin pointed out in dissent in Riddle v McLouth Steel Products, 440 Mich 85; 485 NW2d 676 (1992), these contributory negligence cases sometimes expressed their holdings in terms of a “no-duty” rule: that a possessor owes no duty to protect his invitees from open and obvious dangers.
For example, in Caniff, the plaintiff sought to recover damages for an injury sustained when he fell through a hatchway left open on the deck of a ship. The Court denied recovery. The primary reasons for the denial were that (1) the plaintiff was an experienced sailor who was familiar with ships and who knew that hatchways were often left open while the ship was at port and, therefore, had reason to expect that the hatchway he fell into would have been left open, (2) that the plaintiff failed to exercise due care when he walked carelessly forward in the dark, (3) that the plaintiff’s actions constituted inexcusable negligence, and (4) that the general premises liability rule would not apply in cases where the plaintiff knows or should know that danger exists because it is upon the plaintiff to avoid the peril. In other words, reduced to its simplest terms, Caniff held that the *535 plaintiff should have known better and should have looked where he was going.
In Garrett v WS Butterfield Theatres, Inc, 261 Mich 262; 246 NW 57 (1933), the plaintiff was injured while entering a rest room. The entryway required patrons to step down into the rest room. Plaintiff failed to see the step, and fell upon entry. The Court stated that “[djifferent floor levels in private and public buildings, connected by steps, are so common that the possibility of their presence is anticipated by prudent persons. The construction is not negligent unless, by its character, location, or surrounding circumstances, a reasonably prudent person would not be likely to expect a step or see it.” Id. at 263-264. The Court denied recovery, stating that the defendant was not guilty of negligence because it ov/ed no duty to “prevent careless persons from hurting themselves.” Id. at 264.
Although these two early cases cited by the parties addressed the liability issue by stating that no duty was owed by the defendant to the plaintiff, it seems to me that the reason for the holding in both cases was that the plaintiff should have expected and heeded the danger. I posit that contributory negligence principles actually would require a two-step inquiry: (1) would the premises owner normally owe a duty to the plaintiff to keep the premises reasonably safe, and (2) would the premises owner be relieved of liability because of the affirmative defense of contributory negligence?
In these cases, in order to bar recovery on the basis of the plaintiffs actions, the Court would have had to conclude either that there was no duty to keep the premises reasonably safe, that the premises were rea *536 sonably safe, or that the duty to keep the premises reasonably safe was offset by the plaintiff’s duty to care for his own safety. If the court were to find that no duty existed, there would be no prima facie case of negligence. Were the court to find that the premises were reasonably safe, there would be no breach of the standard of care. If it were the plaintiff’s own failure to protect himself that barred liability despite an unreasonable risk, liability would have been suspended under the contributory negligence doctrine.
Two later cases seemed to recognize that there is a difference between the duty owed and the effect of contributory negligence on that duty. In Ackerberg v Muskegon Osteopathic Hosp, 366 Mich 596; 115 NW2d 290 (1962), the plaintiff sued the defendant for injuries sustained when he fell from a platform located outside a hospital entrance. The trial court denied recovery on two grounds. First, it held that the plaintiff failed to show a duty or its breach. Second, it held that the plaintiff failed to exercise reasonable care for his own safety and that the claim was barred because of the plaintiff’s contributory negligence. The language used by the Ackerberg trial court seemed to be in line with Caniff and Garrett. However, this Court reversed, stating that jury questions existed regarding both whether the defendant hospital had a duty to construct a guardrail and whether the plaintiff was guilty of contributory negligence.
Another relevant case is Quinlivan, in which the plaintiff slipped and fell on some ice in the defendant’s parking lot. This Court held that the defendant owed a duty to the plaintiff to use reasonable care to protect against the hazards arising from the accumulation of ice and snow. The case emphasized that bus *537 iness invitors owe invitees a duty to “be reasonably sure that [the invitor] is not inviting [the invitee] into danger, and to that end, he must exercise ordinary care and prudence to render the premises reasonably safe for the visit.” Quinlivan at 251 (quoting Blakely v White Star Line, 154 Mich 635, 637; 118 NW 482 [1908]). Quinlivan overruled prior case law that said no duty was owed in cases involving the natural accumulation of ice and snow. Yet, the Court also noted that the plaintiff’s actions could be considered in the context of contributory negligence. In my view, Quinlivan correctly determined the defendant’s duty by referencing the relationship between the parties as well as the danger presented, and then viewed the plaintiff’s negligence as affecting liability rather than alleviating the duty owed.
In Placek v Sterling Heights, 405 Mich 638; 275 NW2d 511 (1979), this Court made the move from contributory to comparative negligence. If a plaintiff’s negligence is considered in terms of liability rather than in terms of duty, the move would not necessarily have a huge effect on the scheme of analysis applied in premises liability cases, though it would have an effect on the plaintiff’s ability to recover. For example, if the Caniff case were analyzed under a Quinlivan approach, the defendant ship owner could have prevailed on one of two theories: (1) the ship was reasonably safe, and ordinary care was exercised despite the fact that the hatch was left open, or (2) it was unreasonable to leave the hatch open, but the plaintiff nonetheless would lose because his own failure to exercise due care for his own safety contributed to his injury and barred recovery. Under comparative negligence principles, the defendant could still *538 prevail if the ship was deemed reasonably safe despite the open hatch, but the ship owner would not necessarily prevail in the second instance. As such, there is a significant difference between an interpretation of the open and obvious doctrine that says, “a defendant owes a duty to invitees to keep his premises reasonably safe, but that duty does not extend to protection against open and obvious dangers,” and to say that, “a defendant owes a duty to keep his premises reasonably safe, but he will not be held liable if the plaintiff fails to heed open and obvious dangers.” It is this distinction that lies at the crux of the present case.
D. POST-CONTRIBUTORY CASES
What makes this case particularly difficult is that, in an attempt to be faithful to prior precedent, some of this Court’s decisions that attempted to apply the open and obvious danger doctrine in a post-contributory era confused the issue inadvertently. One such opinion, which I authored, is Williams v Cunningham Drug Stores, Inc, 429 Mich 495; 418 NW2d 381 (1988). In Williams, a store customer was injured after fleeing the store directly behind an armed robber. The primary focus in Williams was whether a business owner has a duty to his invitees to insure against harm resulting from a third-party criminal act. However, in a portion of the opinion I wrote that the duty a possessor of land owes his invitees “does not extend to conditions from which an unreasonable risk cannot be anticipated or to dangers so obvious and apparent that an invitee might be expected to discover them himself.” Id. at 500. The statement was supported with a citation to Restate- *539 merit § 343A. But it would have been more precise to say that liability would be suspended in such circumstances. A better explanation of the duty issue was presented by the opinion’s discussion of § 343, which noted that invitors have a special relationship with invitees and that possessors of land owe a duty to their invitees to exercise reasonable care to protect invitees from an unreasonable risk of harm caused by a dangerous condition on the land.
A better approach to the Restatement is the one that I stated in a later opinion:
When §§ 343 and 343A are read together, the rule generated is that if the particular activity or condition creates a risk of harm only because the invitee does not discover the condition or realize its danger, then the open and obvious doctrine will cut off liability if the invitee should have discovered the condition and realized its danger. On the other hand, if the risk of harm remains unreasonable, despite its obviousness or despite knowledge of it by the invitee, then the circumstances may be such that the invitor is required to undertake reasonable precautions. The issue then becomes the standard of care and is for the jury to decide. [Bertrand at 611.]
Bertrand, indicated that Williams should not be read too broadly. Bertrand cited Williams for the proposition that an invitor is not relieved of the duty to exercise reasonable care to protect invitees against known or discoverable dangerous conditions, even in cases where there would be no duty to warn. Bertrand went on to say that a duty exists by virtue of the relationship between the parties, and then the opinion examined whether the duty had been breached.
I continue to believe that Bertrand correctly focused on liability and on breach. Yet, given the dis *540 cussions of late, I think Bertrand also may have been less precise in its terminology than it could have been.
For example, at one point, I wrote,
Under ordinary circumstances, the overriding public policy of encouraging people to take reasonable care for then-own safety precludes imposing a duty on the possessor of land to make ordinary steps “foolproof.” Therefore, the risk of harm is not unreasonable. However, where there is something unusual about the steps, because of their “character, location, or surrounding conditions,” then the duty of the possessor of land to exercise reasonable care remains. If the proofs created a question of fact that the risk of harm was unreasonable, the existence of duty as well as breach become questions for the jury to decide. [Id. at 616-617.]
This portion of the opinion directly followed a discussion of cases decided under contributory negligence, and was an attempt to incorporate the language of some prior cases. A more correct statement of the law would have been that the duty to exercise reasonable care is not breached in cases involving ordinary steps. In that context, it may have been more evident that Bertrand’s “unusual” characteristics discussion related to the foreseeability and unreasonableness of the risk of harm, rather than creating a special new rule.
It should also be noted that the differing viewpoints I expressed in Williams and Bertrand are due in part to this Court’s intervening decision in Riddle v McLouth Steel Products. The majority in Riddle held, in pertinent part, that an invitor has no duty to warn invitees of open and obvious dangers.

 At the time, 2 Restatement Torts, Negligence, under title of business visitors, § 343, set forth the following standard of care:
A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he (a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them. [Goodman at 82.]

 Section 343A was added to the Restatement after § 343, but the two sections are to be read together, as is indicated by comment (a) to § 343.

 As will be explained, however, the Court has not provided a uniform interpretation of the Restatement, and there has been some debate about whether the Restatement discusses duty or standard of care.